IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DARLA MARIE SHEFFIELD<br>  TDCJ-CID #1443903, | §<br>§<br>§ | |
| v. | § | C.A. NO. C-08-157 |
| | § | |
| UNKNOWN HEAD DOCTOR OF<br>THE NORTH BAY HOSPITAL<br>EMERGENCY ROOM, ET AL. | §<br>§<br>§ | |

## MEMORANDUM AND RECOMMENDATION TO DISMISS ACTION

This case was filed as a civil rights action by a state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972)

(per curiam), and her allegations must be accepted as true, unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that the Court dismiss plaintiff's claims against defendants for failure to state a claim pursuant to 28 U.S.C. §1915(e)(2)(B)(II) and § 1915A(b)(1).

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. FACTUAL ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division, and is currently incarcerated at the Lane Murray Unit in Gatesville, Texas. She filed this action on April 18, 2008, alleging Eighth Amendment claims against an emergency room doctor and nurse who treated her on May 3, 2007.[1] (D.E. 1). A Spears[2] hearing was conducted on May 27, 2008.

---

[1] On April 16, 2008, plaintiff filed four separate lawsuits against numerous individuals, all related to an alleged assault that occurred at the Sinton Jail and her treatment thereafter. The other cases are (1) Sheffield v. Turpen, C.A. No. C-08-154; (2) Sheffield v. Sergeant Frank LNU, et al., C.A. No. C-08-155; and (3) Sheffield v. Shackelford, C.A. No. C-08-161.

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

The following allegations were made in plaintiff's original complaint or at the hearing:

Following her criminal trial, on April 23, 2007, plaintiff was taken to the San Patricio County Jail (the "Jail").  On May 3, 2007, plaintiff participated in a church service at the Jail.  During the service, she did not feel well and asked if she could return to her cell.  Deputy Sheriff Eloise LNU denied her request and yelled at her.

Following the church service, plaintiff was initially returned to her cell.  However, later that day, Deputy Sheriff Eloise LNU came to the cell and ordered plaintiff to get her things and come with her.  Deputy Sheriff Eloise LNU escorted her down the hall and then "handed her over" to three male officers: Sergeant Frank LNU, Officer Chris LNU, and Officer John Doe.  They took her to a cell in the back of the jailhouse.  The officers then began groping plaintiff and threatening her with more violent sexual assault.  The three deputies then left the cell, telling plaintiff that they were going to return with a broom and sexually assault her with it.  She was so frightened that she broke her eyeglasses and began stabbing herself with the metal frame, attempting to hit a vein and to bleed to death rather than suffer the assault.  When the officers returned, they found plaintiff had made several wounds in her arms and neck and that she was bleeding.

Plaintiff briefly passed out, and awoke in the Jail's intake area. Officer Eloise LNU asked her what had happened, but when plaintiff told her, Officer Eloise LNU began yelling at her and calling her a liar. Plaintiff then passed out again.

When plaintiff next awoke, she was being brought into the emergency room at North Bay Hospital in Port Aransas, Texas. Defendant Head Nurse Jane Doe was accompanying her and asking her what happened. She then saw Officer Chris LNU, she remembered the assault, and she began telling Nurse Jane Doe what had happened. At the time, defendant Dr. John Doe and other nurses were in the area. Plaintiff confronted Officer Chris LNU about the assault and talked loud enough for everyone in the area to hear. Officer Chris LNU began sweating and looked like he was going to pass out. Then another guard came and replaced Officer Chris LNU.

Thereafter, Dr. John Doe asked plaintiff what happened and she told him about the assault. She begged Dr. John Doe and Nurse Jane Doe not to return her to the Sinton Jail, but they refused to help her, and she was returned to the Jail that same evening.

Once back at the Jail, plaintiff was placed in solitary confinement. She passed out for about a week. However, during that time, according to three other

inmates, she was chained at her ankles and arms to a chair, clothed only in her underwear, in front of the entire jail population. She alleges that, while she was in solitary confinement, she developed a staff infection and migraines, but was denied medical care. She also claims that the sexual assault was never investigated.

Plaintiff claims that defendants Dr. John Doe and Nurse Jane Doe were deliberately indifferent to her health and safety when they refused to keep her at the hospital, but instead, authorized her return to the Jail, knowing that she had been assaulted there. She seeks compensatory and punitive damages.

### III.  DISCUSSION

**A.     The Legal Standard For A Section 1983 Civil Rights Claim.**

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite her failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). The Supreme Court has held that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (per curiam) (citations omitted); accord Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in

support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. Id.

**B.    Analysis Of Plaintiff's Eighth Amendment Claims.**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials, as well as other individuals providing care and services to prisoners under contract with the State,[3] must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation omitted). Conditions that result in "unquestioned and serious deprivations of basic human needs," or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); accord Hudson v. McMillian, 503 U.S. 1, 9 (1992). Such a violation occurs when a defendant is deliberately indifferent to an inmate's health or safety. Farmer, 511 U.S. at 834.

---

[3] For purposes of this memorandum and recommendation, it is assumed that defendants are state actors under § 1983. See, e.g., West v. Atkins, 487 U.S. at 55 (private physician under contract with the State to provide medical services to inmates at a state prison on a part-time basis acted under color of state law). However, should the Court not adopt this recommendation, nothing herein prevents defendants from arguing that they are not state actors.

Deliberate indifference is more than mere negligence. Id. at 835. The Fifth Circuit has explained that "[t]o establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998); see also Farmer, 511 U.S. at 837 (holding that the subjective test for deliberate indifference requires the official both know of and disregard an excessive risk of harm). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." Bradley, 157 F.3d at 1025 (citation omitted).

Plaintiff claims that defendants were deliberately indifferent to her safety when they returned her to the Jail because they knew she had been assaulted by the three officers.[4] She asserts that she told Nurse Jane Doe directly of the assault, and explained that she stabbed herself with her broken glasses to avoid the threatened sexual assault. She claims also that Dr. John Doe heard her allegations against the three officers and her explanation as to her injuries. Finally, she alleges that both

---

[4] Plaintiff made clear at the Spears hearing that she is *not* complaining about the actual medical care defendants rendered.

7

defendants saw her accuse Officer Chris LNU of assault and saw his reaction to her accusations, such that they should have known she was telling the truth.

Plaintiff's allegations are too tenuous to impose liability on defendants for deliberate indifference to her health and safety. First, she presented to the hospital, not with injuries from any sexual assault, including the "groping," by the officers, but for injuries which she admitted to inflicting on herself. Plaintiff testified that she had stabbed herself with her broken eyeglasses in the arms and neck "trying to hit a vein," and that she passed out because she "lost a lot of blood." Thus, when defendants first observed her, it would not have been unreasonable for them to conclude that she had tried to kill herself. In fact, she claims that one of the officers commented on her being "suicidal." In addition, although plaintiff explained to Nurse Jane Doe why she had injured herself, the officers taking her to the hospital would have given defendants their own report. It would not be unreasonable for Dr. John Doe or Nurse Jane Doe to conclude, based on the information they had from all sources, that plaintiff had injured herself and that there was no "risk" to send her back to jail.

Second, it is doubtful that either a doctor or nurse would have the *authority* to dictate to an inmate's lawful custodian, here the Jail, that the inmate could not return to her assigned facility when there is **no medical justification** for retaining

the inmate, and only the inmate's allegations that she was **threatened** with violent sexual assault and groped inappropriately, but did not sustain injuries from the groping.  As a general matter, decisions by medical providers are not to be overridden by prison officials.  E.g., Hines v. Anderson, 439 F. Supp. 12, 19 (D. Minn. 1977).  However, there does not appear to be any case law to support plaintiff's position that medical providers may be held liable for civil rights violations where they did not prevent the return of an inmate into custody for non-medical reasons.

In Lawson v. Dallas County, No. CA 3-95-CV-2614, 1998 WL 246642 (N.D. Mar. 24, Tex. 1998) (unpublished), a wheelchair-bound inmate who was paralyzed from the chest down, sued the Dallas County Jail, including its medical staff, because *inter alia*, the defendants knew of his heightened risk of developing painful decubitus ulcers but, nevertheless, admitted him into a county facility that lacked procedures and policies to adequately prevent and treat those ulcers.  Id. at *4.  In denying summary judgment, the district court concluded that there was a fact issue of deliberate indifference because the plaintiff did not receive the prescribed medical treatment "in more than one way and on multiple occasions," such that at his last visit to a hospital, the hospital doctors refused to release him back to the Dallas County Jail.  Id. at *3.

The Lawson case, however, does not hold that doctors have the authority to withhold an inmate for a non-medical reason, and it is distinguishable from this action on many levels.  In Lawson, the plaintiff had a clearly identifiable serious medical need.  He had been a paraplegic for a year and a-half without ulcers, but he developed ulcers within three weeks of his arriving at the jail.  In a two-week period, he was sent twice to the local hospital and the jail was given specific orders to follow regarding his treatment, but the orders were not followed.  On his third trip back to the hospital, his doctors refused to let him go back to the Dallas County Jail.

In this case, plaintiff does not claim that she had any medical need to prevent her from being returned to the Jail.  Moreover, neither Dr. John Doe nor Nurse Jane Doe had seen plaintiff prior to the May 3, 2007 emergency room visit, and when they did see her, she was suffering from self-inflicted wounds.  Thus, they had no reason to suspect that sending her back to the Jail would be harmful to her health or any medical condition.  Finally, although plaintiff claims that defendants should not have returned her to the Jail because of her allegations of assault, there is no evidence that any further attempts of assault occurred by the three officers, or any other Jail staff.  Thus, her fears were not realized.

Deliberate indifference is a stringent standard of fault. <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997). Moreover, the courts refuse to micro-manage prisons. See <u>Gates v. Cook</u>, 376 F.3d 323, 338 (5th Cir. 2004) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 562 (1979)). Indeed the Supreme Court has noted that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." <u>Turner v. Safley</u>, 482 U.S. 78, 84 (1987) (citation omitted). Specifically, the Court has held that judgments regarding prison security "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." <u>Id.</u> at 86 (citation omitted).

Here, defendants had no medical reason to detain plaintiff or to refuse to release her back to the Jail. Moreover, they had no authority to make non-medical decisions regarding her placement, as that decision belongs to the Jail officials. As such, plaintiff's accusations fail to establish that either defendant was aware of a serious risk to her health and safety, yet ignored that risk.

## IV. RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that plaintiff's § 1983 claims against Dr. John Doe and Nurse Jane Doe be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Respectfully submitted this 25th day of June 2008.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).